238 P.2d 953

FIELD v. INDUSTRIAL COMMIS-
SION et al.
No. 5544.

Supreme Court of Arizona.
Dec. 10, 1951.

134

Udall & Udall, Tucson, for petitioner.

H. S. McCluskey, Phoenix, Robert E. Yount and Robert W. Pickrell, Phoenix, of counsel, for respondent Industrial Commission.

LA PRADE, Justice.

This appeal is before us on certiorari from an award of the Industrial Commission finding that the average monthly wage of the petitioner at the time he was injured (for the purpose of computing compensation payable to him) was $160.16 per month.

Petitioner, at the time of his injury, was employed by the respondent power company at the hourly rate of $2.00 an hour 8 hours a day 22 days a month with extra pay

for overtime. At the time of his injury, petitioner had been employed 51 days. His first labors were devoted to maintenance construction. Some time later he was transferred to new construction to aid in the erection of a special line then being constructed by the company. During all the time of his employment he had worked some overtime due to weather conditions (storms) that had interfered with the company's service. His paychecks (after deductions) were as follows: August 21 to August 30, $161.07; September 1 to September 15, $168.81; September 16 to September 30, $189.29; October 1 to October 10, $126.95. His total wages earned during the 30 days immediately preceding the injury were $389.03.

The sole question presented here is what was the average monthly wage of the petitioner at the time of injury? It is the contention of the petitioner that having been employed more than 30 days, his average monthly wage should be computed on the basis of the wages actually earned by him during the 30 days immediately preceding the injury, to wit, $389.03. The measure of compensation to be paid in cases similar to this is found in sections 56–956 and 56–952, A.C.A.1939. The applicable portions of these sections are quoted:

"56–956 (a). For temporary total disability: 1. if there be no one residing in the United States totally dependent upon the employee at the time of the injury, compensation of sixty-five (65) per cent of the average monthly wage shall be paid during the period of such disability, not to exceed one hundred (100) months; 2. if there be persons residing in the United States totally dependent for support upon the employee, compensation shall be paid as provided herein with an additional allowance of ten dollars ($10.00) per month for such dependents during the period of such disability."

"56–952. Every employee of any employer subject to the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case of his death, shall receive the compensation herein fixed, on the basis of average monthly wage at the time of injury. The term 'monthly wage' shall mean the average wage paid during and over the month in which such employee is killed or injured. If the injured or killed employee has not been continuously employed for the period of thirty (30) days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident. * * *"

Section 56–956 (a) is applicable for the reason that petitioner at the time the award

was made was temporarily totally disabled, although the commission made no finding to that effect, but a search of the record discloses such to have been the fact. The award should have classified his disability as temporary total and should have found his "average monthly wage" at the time of the injury. In lieu of a specific finding on the question of "average monthly wage" the commission found: "That on the basis of showing of the past work history, previous physical condition, economic situation and all other factors, as required by law, the amount of $160.16 heretofore determined by the Commission most reasonably represents the earning capacity of the above named applicant."

(The "heretofore" determination was an informal determination made by the commission and not a finding of any formal award.) It is apparent that the commission, in attempting to arrive at the "average monthly wage", took into consideration not only the wages earned by the petitioner but his past work history, previous physical condition, the economic situation and "all other factors, as required by law". The catchall phrase "all other factors, as required by law" presumably refers to subsection (d) of section 56–957, which subsection reads as follows: "In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. In case there is a previous disability, as the loss of one eye, one hand, one foot, or otherwise, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury."

This subsection comes into play only at the time of the final award, when the disabling condition is static and a determination must be made of the percentage of disability (ability to earn wages in the future) if any exists. It seems appropriate here to quote from our decision in Fred Harvey Co. v. Industrial Commission, 41 Ariz. 64, 15 P.2d 949, 951, wherein we said: "* * * We think the information sought is entirely outside of this case. Under our statutes, the compensation for temporary total disability is not arrived at by comparing the employee's ability to work after the injury with his ability before, or by deducting from the compensation fixed a percentage on account of previous disease or injury. If the employee suffers a temporary total disability while on duty, he is entitled to 65 per cent. of his average monthly wage for a period not exceeding one hundred months. That is all there is to it."

In order to determine whether there was any justification for the award, the following additional facts before the commission should be recited. They show that for

about 25 years the petitioner had followed the trade or business of a lineman for telephone, electric and power companies in various capacities as lineman and other times as foreman. He was 55 years of age and suffered from asthma for which he came to Arizona frequently during previous years. His last regular employment had ceased in September, 1949, due to the job having been completed. At that time he was earning $2.00 per hour. He arrived in Tucson in January, 1950, at which time he made application to the respondent employer for employment but was not hired until the following August 21st. The evidence does not disclose that the asthma affliction had been in anywise disabling, for it affirmatively appears that the petitioner had lost no time but in fact had worked overtime, including Saturdays and Sundays, hence the condition had had no effect on the "average monthly wage". Had the ailment caused a loss of time (absence from work) naturally it would have been reflected in the wages earned, which in turn are reflected in any determination of average monthly wage. The same observation is equally applicable to his age.

■■ The next question presented is what emphasis is or should have been placed on the past work history of the petitioner? It is true that he had been unemployed for practically 11 months prior to the time he secured employment with the respondent employer. In determining the "average monthly wage" of an employee entitled to compensation, the work record is a factor to be considered when the injured employee is engaged in periodic or spot employments which were dealt with and recognized by this court in Gene Autry Productions v. Industrial Commission, 67 Ariz. 290, 195 P. 2d 143; Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217; Haggard v. Industrial Commission, 71 Ariz. 91, 223 P. 2d 915. But where, as here, the employee is employed by a large public utility having many employees engaged in maintenance and new construction to meet the demands of a large and growing community, it cannot be said that he was engaged in work offering only intermittent employment. This court and the commission can take judicial notice of the industrial pattern in which this employee fitted, including not only his work opportunity with this employer but in the industry in which he was employed or businesses in the same or neighboring localities offering employment to workmen of his trade or skill.

■■ Our Workmen's Compensation Act provides that employees injured by accident arising out of and in the course of their employment shall receive compensation " * * * on the basis of average monthly wage at the time of injury. * * *" Provision is then made for establishing the formula to be followed where the employee has not been continuously employed for 30 days immediately preceding the injury. This section has been considered by this court on numerous occasions, and

we thought reasonably and comprehendingly construed in the Steward case, supra. The statute under consideration provides that the average monthly wage is that wage which "reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident". The amount earned by any employee in the 30 days immediately preceding his injury may or may not represent his "average monthly wage". It is not the amount of money earned in the 30 days immediately preceding the injury that is controlling unless that amount happens to be an amount identical with the average monthly wage, Steward case, supra. In the instant case, it appears that the average monthly wage of the petitioner (in view of his record of no lost time with this employer), in any event would have been $352.00 a month predicated on the wage base of $2.00 an hour 8 hours a day for 22 days per month, without overtime. If overtime is included, then his average monthly wage would have exceeded the sum of $352.00 per month. If overtime is a normal and usual characteristic of the employment, then it is a factor to be taken into consideration in arriving at the average monthly wage. Kennecott Copper Corp. v. Industrial Commission (Gutierrez), 61 Ariz. 382, 149 P.2d 839. Petitioner's contract provided for overtime pay. One of the questions to be answered by the commission is—did petitioner's employment in the usual and ordinary course of events result in overtime work for which he received wages?

So far as we are able to discern, the record in this case does not present a single novel feature. The rules to be followed have heretofore been determined and pronounced by this court. That the commission was unable to apply the applicable rules which we have heretofore so painstakingly pointed out admittedly perplexes us.

The award is set aside.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concurring.