483 P.2d 568

**Leon R. BEARDEN, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Fred G. Hilvert Company, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 499.**

Court of Appeals of Arizona, Division 1, Department A.

April 12, 1971.

Rehearing Denied April 28, 1971.

Review Denied May 25, 1971.

Bernard I. Rabinovitz, Tucson, for petitioner.

William C. Wahl, Jr., Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Arthur B. Parsons, Phoenix, for respondent carrier.

STEVENS, Presiding Judge.

The basic issue before this Court is whether the felony conviction of the petitioner, the injured workman in the matter now before us, resulting in his incarceration in the Arizona State Prison for a term of years, had the effect of suspending his rights to compensation and accident benefits arising out of his industrial accident for the period of his confinement.

The file is a voluminous file and we will set forth only briefly those pertinent dates which relate to the problem now before us. The petitioner sustained a compensable industrial injury on 26 June 1964. He received medical attention on two occasions prior to his arrest for two felonies, neither of which carried a maximum permissible penalty of life imprisonment. He was arrested on either the 12th or the 15th of July 1964, the evidence being conflicting as to the exact date of his arrest. The petitioner remained in confinement in the Maricopa County Jail pending his being adjudged guilty of the two offenses and the pronouncement of the sentences in relation thereto. The petitioner entered the Arizona State Prison on or about 27 January 1965 and there remained in confinement until he was released upon the expiration of his sentences on 21 October 1969. During the period of his legal custody he received some medical attention, the record indicating that the medical attention which he received was not of the same quality which he probably would have received had he not been in confinement.

There is data in the file indicating an average monthly wage in excess of $200. The Commission fixed the petitioner's average monthly wage in the sum of $200. At the time of his injury A.R.S. § 23–1041, subsec. F was in effect, a statutory provision placing a $200 a month floor on the average monthly wage. For a discussion of this section during the period that it was in force see Stevens v. Industrial Commission of Arizona, 11 Ariz.App. 1, 461 P.2d 177 (1969), and Diaz v. Industrial Commission of Arizona, 11 Ariz.App. 580, 466 P.2d 799 (1970). We are not informed as to whether the Commission utilized that statutory provision in fixing the average monthly wage. After the petitioner's release from confinement he gave testimony indicating that the sum of $200 could be low in relation to a proper computation of his average monthly wage.

During the period of the petitioner's incarceration awards were entered. In each instance no award became final. After his release and on 12 March 1970 an award was entered. The award was the subject of a writ of certiorari addressed to this Court, being our case number 1 CA–IC 451. By order of this Court entered on 29 April 1970, based upon a stipulation of counsel, the file was returned to The Industrial Commission for further proceedings. Thereafter the award of 19 May 1970 was entered and it is the last dated award which is now before this Court for review. Except for the final paragraph which contains the 30-day clause, we quote the award *in toto*.

> "Heretofore on March 12, 1970, this Commission entered Decision Upon Hearing and Findings and Award for Temporary Disability.
>
> Subsequent thereto a Writ of Certiorari was filed with the Court of Appeals, following which a Stipulation was entered into by all interested parties to remand the matter to the Industrial Commission of Arizona for further review and decision.
>
> This Commission having reconsidered the file, evidence and all reports now issues Order Rescinding Decision Upon Hearing and Findings and Award for Temporary Disability and Decision Upon Hearing and Findings and Award as follows:

### FINDINGS

> 1. That the above-named applicant on June 26, 1964 sustained a personal injury by accident arising out of and in the course of his employment.
>
> 2. That at the time of said accident said applicant was employed in the State of

Arizona by the above-named defendant employer who was insured against liability for the payment of accident benefits and compensation under said law by the above-named defendant insurance carrier.

3. That said personal injury entitled said applicant to accident benefits (medical) and compensation as indicated.

4. The applicant still requires medical treatment as to his left foot condition which is not stationary.

5. The applicant should be restored to temporary disability status and is entitled to full compensation benefits from the date of injury, less those benefits which have been previously paid; except applicant is not entitled to any compensation benefits or medical benefits while incarcerated in the State penitentiary.

6. That said applicant had no persons dependent upon him for support at the time of said injury.

7. That the average monthly wage of said applicant at the time of said personal injury was the sum of $200.00.

8. That the applicant's reflex dystrophy of the left foot is related to the industrial accident of June 1964.

9. That the applicant has no other permanent physical or mental disability resulting from the industrial accident of June 1964.

## AWARD

Award is hereby made payable to said applicant by the above-named defendant insurance carrier as follows:

1. That said applicant is entitled to medical benefits as set forth in Findings No. 3 and No. 4.

2. That said applicant is entitled to compensation benefits as set forth in Findings No. 3.

3. The applicant should be restored to temporary disability status and is entitled to full compensation benefits from the date of injury, less those benefits which have been previously paid; except

applicant is not entitled to any compensation benefits or medical benefits while incarcerated in the State penitentiary.

IT IS ORDERED that the Decision Upon Hearing and Findings and Award for Temporary Disability entered herein on the 12th day of March, 1970, be, and the same is hereby rescinded."

Three of The Industrial Commissioners approved the 19 May 1970 award and one Commissioner disapproved the award. A review of the file discloses that the majority shared the view expressed in a notation in the file as follows:

"Civil rights suspended while in prison— No comp. during that time."

Whereas the minority did not share that view.

## STATUTORY BACKGROUND

A brief review of some of the constitutional and statutory background may prove beneficial. In 1925 the Arizona Legislature proposed a workmen's compensation amendment to the Arizona Constitution. This amendment was approved by a vote of the people; it became effective on 2 November 1925 and is now § 8 of Article 18 of our constitution, A.R.S. The same Legislature adopted a Workmen's Compensation Act. The amendment refers to the Act as HB 227, the Act appearing in the 1925 Session Laws as Chapter 83. Chapter 83 recited that the same would become effective upon the day following the effective date of the constitutional amendment.

Over the years the Arizona Legislature adopted some amendments to the Workmen's Compensation Act, none of which are significant in relation to this opinion. Then in the year 1968 a number of major changes were enacted effective 1 January 1969.

In 1943 the Arizona Legislature enacted the Arizona Occupational Disease Disability Law, effective 1 July 1943. See Chapter 26 of the Laws of 1943. The Occupational Disease Law remained substantially unchanged until the above-referred to 1968 legislative action, which action modi-

fied portions of the Occupational Disease Law as well as portions of the Workmen's Compensation Act. In this opinion all references to sections of the Arizona Revised Statutes will be to those sections as they were in effect on the date of the injury in question, that is prior to the effective date of the 1968 amendment, unless otherwise specified.

## PROCEDURAL PROBLEMS

A detailed and comprehensive petition for the writ of certiorari was filed in the instant matter, the attack being directed to the above-quoted Finding No. 5. In the opening brief, Finding No. 5 was discussed and the petitioner also attacked the $200-average-monthly wage determination and one other matter. The Fund urged that only Finding No. 5 could be presented to the Court and that the other alleged errors could not be urged. The Fund directed its brief to the alleged errors in Finding No. 5.

Writs of certiorari directed to the review of the awards of The Industrial Commission of Arizona are authorized by A.R.S. § 23–951. This section has been amended in matters not material to this opinion. The section specifies that the vehicle for judicial review of the awards of The Industrial Commission shall be by "a writ of certiorari to review the lawfulness of the award" and the limit of power of the Court is to be "either affirming or setting aside the award."

■ The statute does not specify those matters which are essential to the preparation of a proper petition for a writ of certiorari. In our opinion the petition need not set forth "assignments of error." The petition can be limited to essential jurisdictional facts such as the parties, their respective status before The Industrial Commission, the date of the award, and the identity of the award by The Industrial Commission claim number and the insurer's claim number. The issues are framed by the briefs. In a civil appeal, which we believe to be more technical in nature than certiorari to review the award of The Industrial Commission, our Supreme Court stated in Hanen v. Willis, 102 Ariz. 6, 423 P.2d 95 (1967):

"* * * the sole issue for determination in this opinion is whether the notice of appeal filed by appellant Hanen was sufficiently valid to vest jurisdiction in the appellate court." 102 Ariz. at 7, 423 P.2d at 96.

In its opinion the Supreme Court stressed that no one was injured or misled by the informalities of the notice of appeal there in question. We hold that in the case now under consideration no one was injured or misled by the manner of the drafting of the petition for the writ of certiorari.

■ As we pointed out earlier in this opinion there is but one award, the 19 May 1970 award. There is no prior award which became final. Thus the average monthly wage has not been established with finality. The effect of this opinion is to vacate the 19 May 1970 award and all issues in relation thereto are opened for reconsideration by The Industrial Commission. Russell v. Industrial Commission of Arizona, 104 Ariz. 548, 456 P.2d 918 (1969).

Had the posture of this case been such that we would affirm the award in relation to the effect of the prison incarceration then we would have looked to the record to see whether the average monthly wage issue had been adequately contested and adequately presented to The Industrial Commission for its decision. Under the circumstances before us we need not examine the record in relation to this matter.

## EFFECT OF PRISON CONFINEMENT

The Fund strongly urges that A.R.S. § 13–1653, found in the criminal section of our Code, governs the matter before us and more particularly subsection (A) thereof. Because of the importance of this section we quote the same in its entirety.

"§ 13–1653. Effect of sentence of imprisonment in state prison on civil, personal and property rights; abolishment of forfeitures

A. A sentence of imprisonment in the state prison for any term less than life suspends the civil rights of the person so sentenced, and forfeits all public offices and private trusts, authority or power during such imprisonment.

B. A person sentenced to imprisonment in the state prison for life is thereafter deemed civilly dead.

C. Persons sentenced to imprisonment in the state prison for any term shall not thereby be rendered incompetent as witnesses upon the trial of a criminal action or proceeding, or incapable of making and acknowledging a sale or conveyance of property.

D. The person of a prisoner sentenced to imprisonment in the state prison is under the protection of the law, and any injury to his person, not authorized by law, is punishable in the same manner as if he was not convicted and sentenced.

E. The conviction of a person for crime shall not work forfeiture of any property, except where a forfeiture is expressly imposed by law. All forfeitures to the state, unless expressly imposed by law are abolished."

It is noted that the above statutory provisions have changed but little since the 1901 Code. Also of interest in this area of general law of our State, we find a reference to civil rights in § 2 of Article 7 of our constitution, a section entitled "Qualifications of voters; disqualifications." Therein the constitution states in part:

" * * * nor shall any person convicted of treason or felony, be qualified to vote at any election unless restored to civil rights."

Another statute of general interest in relation to persons who stand convicted of a crime is subsection (B) of A.R.S. § 12–2201 which provides in part:

"A person shall not be incompetent to testify * * * because he has been * * * convicted of a crime, * *."

An important Arizona decision on the subject of civil rights is the case of Harrison v. Laveen, 67 Ariz. 337, 196 P.2d 456 (1948). In Harrison the issue was the matter of the voting rights of American Indians. Certainly, Harrison presents a civil rights issue far from the one facing this Court in the case at bar. We believe that it is appropriate to quote from the Harrison decision to illustrate that the civil rights of persons are jealously protected by our courts. Our Supreme Court stated:

"In a democracy suffrage is the most basic civil right, since its exercise is the chief means whereby other rights may be safeguarded. To deny the right to vote, where one is legally entitled to do so, is to do violence to the principles of freedom and equality." 67 Ariz. at 342, 196 P.2d at 459.

* * * * * *

Our view coincides with the late Chief Justice Ross that the matter of determining what is 'good public policy' is for the executive and legislative departments and that the courts must base their decisions on the law as it appears in the constitution and statutes. We concede that very persuasive arguments may be advanced upon both sides of the 'public policy' question, but we refuse to be drawn into the controversy as to the wisdom of granting suffrage to the Indians, our sole concern being whether the constitution, fairly interpreted, denies them the franchise." 67 Ariz. at 344, 196 P.2d at 460.

Another case in the field of civil rights is a case arising under the criminal law and this is the case of Holman v. State of Arizona, ex rel. Eyman, 5 Ariz.App. 311, 426 P.2d 411 (1967). Therein the Court stated:

"A convicted felon such as appellant, although his civil rights are suspended (A.R.S. § 13–1653, subsec. A) is nevertheless a 'person' entitled to the protection of the Fourteenth Amendment as to equal protection, (Citation omitted.) and

due process. (Citation omitted.)" 5 Ariz.App. at 313, 426 P.2d at 413.

Let us now turn more specifically to the Arizona Constitution and to the statutes relating to workmen's compensation and to the allied area of occupational disease to see wherein compensation, once the individual is shown to have been injured in an industrially related situation which would otherwise be compensable, forfeits those rights or undergoes a suspension of those rights.

Section 8 of Article 18 of the constitution, hereinbefore referred to, speaks in terms of:

"* * * compensation shall be required to be paid to any such workmen * *."

And in the area of "relief and protection * * * from the burdensome, expensive and litigous remedies" refers not only to the workmen but also to "their widows, children or dependents." The foregoing provisions are qualified by the phrase "as defined by law."

We must bear in mind that the same Legislature which drafted the constitutional amendment also drafted the Workmen's Compensation Act. We read the two as being complementary to each other. So it is important to ascertain the statutory exemptions to the requirement that an injured workman "shall be paid."

As to the right to review by certiorari given by A.R.S. § 23–951. Even as amended, we find no exception based upon incarceration or otherwise. In that section it is provided that the writ must be filed within 30 days, a provision which is found in substance in A.R.S. § 23–943, subsec. H, 1968 amendment. There is no provision for the forfeiture or suspension of these requirements.

A.R.S. §§ 23–1044 and 1045 are couched in terms of "shall be paid."

The right to file a claim for workmen's compensation is lost under A.R.S. § 23–1061, subsec. D unless the same is "filed within one year after the day upon which the injury occurred or the right thereto ac-

crued." See also the 1968 amendment relating to the same one-year period which is found in the amended § 23–1061, subsec. A.

Prior to the 1968 statutory amendment The Industrial Commission enacted Rule 60 which has now been set forth as a statutory rule in the 1968 amendment as § 23–1071. Thereby a forfeiture of the right to compensation is provided during absences from the State under specified circumstances. See also A.R.S. § 23–1228 relating to occupational diseases.

A.R.S. § 23–908, subsec. E provides for the forfeiture of the right to compensation under certain specified conditions with the power in the Commission to relieve the workman of that forfeiture. See also the 1968 amendment to this section.

A.R.S. § 23–1026 relates to the requirement that the injured workman submit to medical examinations at "a time and place having regard to the convenience of the employee, his physical condition and ability to attend." There is a provision for the suspension or reduction of compensation under specified circumstances. In this connection see the 1968 amendment to this section and also the occupational disease provision in § 23–1226.

Section 23–1027 provides for the forfeiture of the right to compensation under specified circumstances and there is a similar section relating to occupational diseases, being A.R.S. § 23–1227.

Under A.R.S. § 23–1028 if one has willfully made a false statement or representation in order to obtain compensation, he shall be guilty of a misdemeanor and "he shall in addition forfeit all right to such compensation, benefit or payment after conviction of the offense." There is a similar provision under the Occupational Disease Law and § 23–1229.

The foregoing does not purport to be an exhaustive analysis of our statutory law. No constitutional or statutory provision relating directly to workmen's compensation has been brought to our attention which declares that a person whose civil rights

are suspended under A.R.S. § 13–1653, subsec. A thereby forfeits his right to compensation or suffers a suspension of his rights thereto. Whether that should be the law is a matter of public policy which should be determined by the Legislature.

The majority is mindful of the concurring opinion. The majority is of the opinion that the "statutory right" to workmen's compensation cannot be classified strictly as either a "civil right" or as a "property right."

There are some Arizona cases which relate to convictions and workmen's compensation.

In Johnson v. Industrial Commission of Arizona, 88 Ariz. 354, 356 P.2d 1021 (1960), the claimant was serving a county jail sentence for a misdemeanor and while so serving he was injured in the course of private employment. His injury was held to be compensable. The Johnson case does not resolve our problem.

In Watson v. Industrial Commission of Arizona, 100 Ariz. 327, 414 P.2d 144 (1966), the claimant was serving time in the Arizona State Prison and therefore had been convicted of and sentenced for a felony. He was working as a trusty outside the prison walls doing prison labor when he was injured. The Supreme Court held that he did not then enjoy the privilege of an employer-employee relationship. Addressing itself to the matter of public policy the Supreme Court concluded its opinion by stating:

"We are aware and mindful of the unfortunate circumstances in which petitioner finds himself. The injury to petitioner's hand is serious and will require remedial surgery to correct. It is true that he will not always be a prisoner, and such an injury will probably be permanent and 'create the same social problem after he returns to civil life as it would if the injury occurred while he was free.' * * * a change in the law which would bring such cases within the protection of the Workmen's Compensation Act is within the powers of the leg-

islature, not of the courts." 100 Ariz. at 333, 414 P.2d at 149.

In our case of Vaughn v. Industrial Commission of Arizona, 13 Ariz.App. 532, 478 P.2d 530 (1971), the claimant was sentenced after an award had been entered finding no permanent disability and while his petition for rehearing was pending. Our present issue was not there involved.

In Lewis v. Industrial Commission of Arizona, 2 Ariz.App. 522, 410 P.2d 144 (1966), the claimant had been convicted of a felony and had served his time several years prior to his industrially related injury. Under our constitution his civil rights were suspended by his conviction. There is no statement in the opinion to the effect that his civil rights had ever been restored and civil rights are not automatically restored by a prisoner's release from confinement. The issue as to the effect of his conviction upon his right to compensation was not raised. This Court, after referring to a number of matters which might cast discredit upon his testimony including the fact of his arrest and conviction stated:

"Although this evidence may be considered in connection with his credibility, we would, however, remind the Commission that industrial compensation is not based on the good moral character of the petitioner, but is founded upon whether the petitioner comes within the scope of the workmen's compensation statutes." 2 Ariz.App. at 526, 410 P.2d at 148.

In the instant case the petitioner was single and without dependents. The law would be the same in relation to entitlement to compensation even had he had a wife and children dependent upon him or his compensation benefits. Not only were dependents recognized in the constitutional amendment but they were also set forth as reasons for the enactment of an emergency clause in the law when it was adopted in the year 1925. We recognize that it may be difficult to determine loss of earning capacity while a person is confined with a disability which is less than a total dis-

ability, whether that total disability be permanent or temporary. The fact that a particular case presents a difficult problem does not resolve the case into one of no compensation.

We hold that the Arizona Legislature has not provided for the forfeiture or suspension of compensation and accident benefits during the period of the prison confinement of a claimant serving a sentence less than life. We find no extensions of time within which to process and protect his workmen's compensation rights during a period of confinement. We expressly refrain from expressing an opinion as to the effect of a life sentence whereby one is declared to be civilly dead.

The award is set aside.

CASE, J., concurs.

DONOFRIO, Judge (specially concurring).

I agree with the majority of this Court in its decision that the award of the Industrial Commission should be set aside. However the majority bases its decision on A.R.S. § 13–1653, subsection (A), stating that the petitioner's "civil rights", i. e., his rights to accident benefits and payments under the Workmen's Compensation Act while in prison have not been suspended.

To reach its result the majority stated that A.R.S. § 13–1653, subsection (A), must be read in conjunction with the specific workmen's compensation statutes, holding that since the Arizona Legislature enacted both A.R.S. § 13–1653 and the workmen's compensation statutes, workmen's compensation payments and benefits should be denied only where specifically mentioned in the workmen's compensation statutes. Therefore, even though § 13–1653, subsection (A), specifically states, "A sentence of imprisonment in the state prison for any term less than life suspends the civil rights of the person so sentenced * * *", the majority concludes that the civil rights of the petitioner are not suspended because

the Legislature in its workmen's compensation statutes has nowhere suspended the civil rights of a claimant who is serving less than a life sentence.

It appears to me, however, that such an extensive analysis is not necessary to decide this case. It is my belief that A.R.S. § 13–1653, subsection (A), dealing with the suspension of civil rights is inapplicable to the instant case. Instead, the case should be determined by A.R.S. § 13–1653, subsection (E), which states:

"The conviction of a person for crime shall not work forfeiture of any *property*, except where a forfeiture is expressly imposed by law. All forfeitures to the state, unless expressly imposed by law are abolished." (emphasis added)

The subject matter of discussion is accident benefits and compensation to which the petitioner apparently is entitled. In no way can I equate accident benefits and compensation to civil rights. I believe these to be clearly property rights.

Arizona has long stated that compensation awarded under the Workmen's Compensation Act "is in lieu of lost wages and not as damages for pain, suffering and monetary loss * * *." Sorenson v. Six Companies, Inc., 53 Ariz. 83, 90, 85 P.2d 980, 983 (1939). See also, Paramount Pictures, Etc., v. Ind. Com., 56 Ariz. 217, 106 P.2d 1024 (1940). In Sorenson the court also stated:

"* * * Such being the case, the purpose to be accomplished by the compensation act is to provide for the injured employee, and those dependent upon him, a certain amount of compensation which is supposed to represent, in part at least, the wages which he would presumably have earned had he not been injured. (citation omitted)." 53 Ariz. at 90, 85 P.2d at 983.

The same reasoning can also be implied from the Arizona workmen's compensation statutes themselves. A.R.S. § 23–1041 et seq.

If the benefits petitioner is seeking under the Workmen's Compensation Act were

determined to be payment for damages, then perhaps they could be considered a part of petitioner's civil rights, i. e., his right to sue for damages. However, since our courts have held these payments to be in lieu of lost wages, I believe them to be logically his property, and more specifically a property right. Therefore, having determined that accident benefits and compensation are a property right under A.R.S. § 13–1653, subsec. E, and finding no forfeiture expressly imposed by workmen's compensation law because of incarceration in the state prison, I believe petitioner to be entitled to workmen's compensation payments for that period of time he was in prison.